COURT OF APPEALS OF VIRGINIA

Present:  Judges Baker, Benton and Overton
Argued at Norfolk, Virginia


QUANTI M. EVANS, S/K/A
 QUANTI MONTERIO EVANS
                                        MEMORANDUM OPINION[*] BY
v.  Record No. 2557-95-1          JUDGE JAMES W. BENTON, JR.
                                          DECEMBER 10, 1996
COMMONWEALTH OF VIRGINIA


           FROM THE CIRCUIT COURT OF SOUTHAMPTON COUNTY
                 James C. Godwin, Judge Designate

           Kathleen A. Maynard, Assistant Public
           Defender, for appellant.

           Kathleen B. Martin, Assistant Attorney
           General (James S. Gilmore, III, Attorney
           General, on brief), for appellee.


     Quanti Evans was convicted of possession of cocaine with the

intent to distribute.  On this appeal from the trial judge's

refusal to suppress evidence, Evans argues (1) that the police

found evidence during a detention that violated the Fourth

Amendment and (2) that the statement he made after his arrest was

not voluntary.  For the reasons that follow, we hold that the

detention was unlawful and that the trial judge erred in

admitting the seized evidence.

                            I.

     The evidence proved that at 9:25 p.m. on September 2, 1994,

Officer Christopher P. Smith and Officer Clark were on routine

patrol when they saw an automobile parked on a dead-end street.

          [*]Pursuant to Code § 17-116.010, this opinion is not
designated for publication.

The officers stopped their vehicle facing the automobile and illuminated the automobile with their bright headlights. Officer Smith testified that this particular street was an area normally checked for drug activity. He also testified that he observed a pile of clothes on top of the automobile. He recognized the automobile as belonging to an individual who rented it to other people in exchange for narcotics.

The officers, both in uniform, left their vehicle and went to the automobile. Officer Smith approached the automobile on the driver's side. He saw five people inside and noticed that the interior was "extremely smoky." Officer Smith motioned for the person in the driver's seat to roll down the window. The driver, who was not wearing a shirt, looked away. Officer Smith then tapped on the window and again motioned to the driver to open the window. After the driver partially rolled down the window, Officer Smith detected a strong odor of marijuana.

Officer Smith asked the driver to produce his driving permit and vehicle registration. The driver gave Officer Smith his permit. The passenger in the front seat, Quanti Evans, looked in the glove compartment for the registration card without success. While this was occurring, Officer Smith noticed a cellophane wrapper for a cigar on the ground outside the automobile. He testified that he concluded the occupants were smoking marijuana in a hollowed-out cigar.

Officer Smith ordered the driver out of the automobile.

After a brief conversation with Officer Smith, the driver consented to a search of the automobile.  The officers then removed Evans and the other three occupants and conducted pat down searches.  The officers found two small baggies of marijuana and a cigar stuffed with marijuana on one of the passengers from the rear seat.  The officer who searched Evans found $271 in his front pants pocket.  After Officer Clark discovered cocaine in the glove compartment, Officer Smith arrested Evans.

At the police station, the officers placed Evans in a cell.  Because Evans was a minor, Officer Smith contacted Evans' mother.  When Evans' mother arrived, Officer Smith advised Evans of his <u>Miranda</u> rights.  Evans and his mother indicated that they understood the <u>Miranda</u> rights, and they both signed a waiver form.

Officer Smith testified that he explained the charges and told Evans and his mother that it was "always in [a defendant's] best interest to make a statement, get the facts out as he sees them, clear the air sort of thing."  He also advised Evans that he would tell the Commonwealth's Attorney and the judge that Evans had been cooperative.  He testified that although he told Evans that "anything can happen" in court, he also told him "that it would, may be more favorable to him" if he gave a statement.  Officer Smith said he "may have told [Evans] that [he has] seen the court . . . go on a different route with people that make statements or that type of thing."  After Officer Smith made

those statements, Evans gave a written statement confessing his possession of the cocaine in the glove compartment.

Evans testified at the suppression hearing that Officer Smith told him that he "need[ed] to be cooperative" so that the Commonwealth's Attorney would "take it easy on [him], but if [he kept] trying to fight the system they [would] . . . send [him] away for a long time." Evans also alleged that Officer Smith stated that in "previous cases . . . where people wrote statements they didn't get that much time."

The trial judge found that the police officers had a reasonable suspicion of criminal activity when they detained the occupants of the automobile and found that Evans' statement was voluntary. Thus, the trial judge denied Evans' motion to suppress both the cocaine seized from the glove compartment and Evans' statement.

## II.

"When the police stop a motor vehicle and detain an occupant, this constitutes a 'seizure' of the person for Fourth Amendment purposes, even though the function of the stop is limited and the detention brief." Zimmerman v. Commonwealth, 234 Va. 609, 611, 363 S.E.2d 708, 709 (1988) (citations omitted). When the officers parked their car blocking the path of the suspects' vehicle, shined their bright lights into the vehicle, approached the vehicle in uniform, and insisted that the driver roll down his window and display his driver's permit, the

officers effected a stop of the passengers in the vehicle.

"[T]he police can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot.'" United States v. Sokolow, 490 U.S. 1, 7 (1989) (citing Terry v. Ohio, 392 U.S. 1, 30 (1968)). The Terry standard requires that "[t]he officer . . . be able to articulate something more than an 'inchoate and unparticularized suspicion or "hunch."'" Sokolow, 490 U.S. at 7 (citation omitted). The record must contain a basis for the trial judge and this Court to exclude the hypothesis that the police operated on a hunch. The Supreme Court has stated that "[a] court sitting to determine the existence of reasonable suspicion [that a crime is occurring] must require the agent to articulate the factors leading to that conclusion." Id. at 10.

Although the record contains a myriad of facts, the record contains no testimony by the officers asserting that they suspected criminal activity or articulating the nature of the criminal activity they allegedly suspected. The officers had not received a call that required them to respond to that vicinity. Officer Smith testified that they were on routine patrol when they saw the automobile. Moreover, he responded in the affirmative when asked, "Well, is there any responsibility . . . when you see a vehicle parked at a location where in your opinion it's not supposed to be parked and it is abandoned, do you go up

and check it?"  However, no evidence established that the automobile appeared abandoned.

Although the trial judge found "from the evidence presented that the officers had every reasonable suspicion," the officers did not articulate a basis to support a conclusion other than a desire to check the automobile because it was suspicious.  In short, the officers did not articulate a basis to exclude the conclusion that the stop was based on a hunch.  For these reasons, we hold that the trial judge erred in refusing to suppress the evidence seized from the automobile.

### III.

"The burden is upon the Commonwealth to prove that extra-judicial inculpatory statements were made voluntarily before they can be admitted in evidence against one charged with or suspected of the commission of a crime."  Gwaltney v. Commonwealth, 19 Va. App. 468, 472, 452 S.E.2d 687, 690 (1995).  In assessing the evidence, this Court must examine the totality of the circumstances.  Id.  None of the facts and circumstances of the interrogation established that Evans' "will was overcome and his capacity for self-determination critically impaired."  Wilson v. Commonwealth, 13 Va. App. 549, 554, 413 S.E.2d 655, 658 (1992).  The statements made by the police officer did not render the confession inadmissible.  See Starks v. Commonwealth, 225 Va. 48, 52-54, 301 S.E.2d 152, 155 (1983).

Accordingly, we reverse the conviction and remand for

further proceedings.

                                            <u>Reversed and remanded</u>.